# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America<br><br>v.<br><br>Francisco Javier Arana Nieblas | CRIMINAL COMPLAINT<br><br>CASE NUMBER: MJ-24-04098-001-PCT-CDB |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

On or about the date described in Attachment A in the County of Coconino in the District of Arizona, the defendant committed the crime of Possession or Receipt of Goods Stolen from Interstate Shipment, in violation of Title 18, United States Code (U.S.C.) § 659, offense described as follows:

**See Attachment A, Description of Count**

I further state that I am a Special Agent for Homeland Security Investigations (HSI) and that this complaint is based on the following facts:

**See Attachment B, Statement of Probable Cause, Incorporated by Reference Herein.**

Continued on the attached sheet and made a part hereof:     ☒Yes     ☐ No

AUTHORIZED BY: Addison Owen, AUSA _/s/ A. Owen_

Chris Foster, SA for HSI
Name of Complainant

_Chris Foster_    04-15-2024
Signature of Complainant

Sworn to telephonically before me

April 15, 2024
Date

at    Flagstaff, Arizona
City and State

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge
Name & Title of Judicial Officer

Camille D Bibles
Digitally signed by Camille D Bibles
Date: 2024.04.15 12:17:25 -07'00'
Signature of Judicial Officer

**CC:   USM & PTS**

# ATTACHMENT A
# DESCRIPTION OF COUNT
## COUNT 1
### Theft from Interstate Shipment

On or about April 13 2024, in the District of Arizona, Defendant FRANCISCO JAVIER ARANA NIEBLAS knowingly had in his possession goods and chattels, to wit: Nike Shoes, of a value in excess of $1000.00, which had been stolen from a Burlington Northern Santa Fe train while moving in interstate commerce from California to Arizona, knowing the said goods and chattels to be stolen.

All in violation of Title 18, United State Code, Section 659.

## ATTACHMENT B
## STATEMENT OF PROBABLE CAUSE

I, Chris Foster, a Special Agent for Homeland Security Investigations (HSI), being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with HSI and have been so employed since December 1997. I have a Bachelor of Science in Criminal Justice from California State University Sacramento. I am a law enforcement officer of the United States, and I am empowered by law to conduct criminal investigations, make arrests, and serve search and arrest warrants.

2. As a Special Agent with HSI, your Affiant investigates criminal violations of United States law, including import and export violations, controlled substances law violations, and money laundering violations. Your Affiant has participated in hundreds of investigations involving stolen vehicle organizations, theft ring investigations, possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions. As an HSI Special Agent, your Affiant has been trained in conducting narcotics and money laundering investigations and received specialized training concerning violations of the Controlled Substances Act contained within Title 21 of the United States Code. I am currently assigned to the HSI Flagstaff Office located in Flagstaff, Arizona, where we investigate transnational criminal organizations to include money laundering and drug trafficking organizations operating throughout the United States.

3. By virtue of my employment as a Special Agent, your Affiant has performed various tasks, which include, but are not limited to:

   a. functioning as a surveillance agent, thus observing and recording movements of persons involved in violations of United States Code as well as violations of Arizona State law;

   b. interviewing witnesses, confidential reliable informants (CIs) and sources of

      information (SOI) relative to the violations of United States Code as well as violations of Arizona State law;

   c.  functioning as a case agent, entailing the supervision of specific investigations involving various crimes throughout the United States; and

   d.  conducting complex investigations involving transnational criminal organizations committing various crimes throughout the United States.

4.    I have consulted with other experienced investigators concerning the practices of transnational criminal organizations and the best methods of investigating them. In preparing this affidavit, I have conferred with other Special Agents and law enforcement officers. Furthermore, I have personal knowledge of the following facts or have learned them from the individual(s) mentioned herein.

5.    Based on the below facts, your Affiant submits there is probable cause that Francisco Javier ARANA Nieblas committed the crime of Possession or Receipt of Goods Stolen from Interstate Shipment, in violation of Title 18, United States Code (U.S.C.) § 659.

## BACKGROUND

6.    Over the past fifteen years, several Transnational Criminal Theft Organizations have been burglarizing Burlington Northern Santa Fe (BNSF) Railway as well as Union Pacific trains throughout the Southwest of the United States to include Arizona. These organizations consist primarily of Mexican citizens from the Mexican State of Sinaloa who operate out of Arizona and California, with extensive connections throughout California, Arizona, and New Mexico. The train burglaries have increased in frequency over the past two years.

7.    The suspects usually scout high value containers on the BNSF railway on Eastbound trains that parallel Interstate 40 near Needles, California. Once the organization targets a particular train of interest, they typically find a location for several train burglars to get on the train. Once on the train, the burglars open container doors while the train is moving and target merchandise to steal such as electronics, tools, and footwear. The

burglars often target containers with visible high-security locks and use reciprocating saws, bolt-cutters, or similar tools to defeat the locking mechanisms.  Once the burglars target a specific container that has desirable merchandise, the burglars on the train communicate with follow vehicles utilizing cellular devices, and those follow vehicles surveil the train until it stops, or the burglars will cause the train to stop to unload the freight.  The suspects often cut the train braking system air hose, which causes the train to go into an emergency stop (commonly referred to as UDE), which is a sudden and dramatic application of all the brakes on the train.  By cutting an air hose, the burglars can control when and where the train is stopped to unload the cargo they target to burglarize.  This act is very dangerous and can cause a train to derail, which could ultimately cause serious injury or death to BNSF employees or citizens.  The suspects have also sabotaged the train signal system by cutting the locks off signal boxes and then by cutting the control wires inside.  This is also a dangerous act that creates dark areas on the rail network, requiring non-traditional train dispatching functions and extensive repairs.  High-value trains travel at speeds up to 70 MPH on multiple tracks in both east and west directions. The train crews and train dispatchers rely on the signals for safe transportation.

8. Once the burglars unload the merchandise from the container that is on the train, the burglars often hide the product in fields or brush adjacent to the BNSF tracks to conceal it until it can be picked up later.  The location of the stolen merchandise is then shared by the train burglars with the use of cellular devices to the surveillance crew who are following the train.  The organization will then send a U-Haul or box truck to pick up the stolen merchandise if law enforcement is not detected.  Once the stolen merchandise has been picked up, it is usually transported to California where it is sold or fenced to wholesale online retailers such as third-party Amazon and eBay resellers.

## **CURRENT INVESTIGATION**

9. On April 13, 2024, BNSF Special Agent Derrick Porter told your Affiant the following information:

a. Special Agent Porter learned that on the evening of April 12, 2024, several individuals were encountered but not arrested on BNSF train ZLACNSA812M in Needles, California, and during that event, the individuals had opened container TTNU4556655 and attempted to burglarize the container. TTNU4556655 doors were closed, and BNSF train ZLACNSA812M departed the BNSF train station in Needles, California, and continued to travel eastbound from California through the District of Arizona and into New Mexico.

b. Special Agent George Justice told Special Agent Porter it was reported through BNSF dispatch that a blue colored quad cab truck along with a U-Haul style box truck with dark tinted windows was actively burglarizing BNSF train ZLACNSA812M near Grants, New Mexico.

c. New Mexico State Police responded to the burglary site and observed container doors were open on BNSF train ZLACNSA812M. New Mexico State Police also observed a blue color quad cab truck but did not see the U-Haul style box truck. At the same time, the blue colored quad cab took off from the burglary scene at a high rate of speed and the New Mexico State Police did not pursue.

d. Later, BNSF Special Agent Justice was able to inspect container TTNU4556655 that was on BNSF train ZLACNSA812M, and during that inspection he observed that container TTNU4556655 contained Nike shoes and that most of the container was empty.

e. Special Agent Porter checked BNSF records and learned BNSF train ZLACNSA812M was stopped near Grants, New Mexico, on April 13, 2024, from 11:40 a.m. until 12:30 p.m.

f. Later, a contract employee for Nike identified as Bobby Motley indicated that they had technology in one of the boxes that was burglarized from container TTNU456655 in Grants, New Mexico, and that it appeared that

those boxes were now traveling west from New Mexico to Arizona.

10. Your Affiant conducted Department of Homeland Security import research related to container TTNU4556655 and learned the following:

   a. On March 24, 2024, container TTNU4556655 was shipped on the Motor Vessel Maersk Antares on voyage 411N from Fuzhou, China, and arrived at the Los Angeles, California, Seaport on April 8, 2023, then transferred to BNSF for transportation to Chicago, Illinois.

   b. Container TTNU4556655 contained 1,966 cartons of footwear that belong to Nike USA with a manifested value of $395,199.

11. At approximately 1:52 p.m., your Affiant observed a white GMC box truck with one occupant, later identified as Francisco Javier ARANA Nieblas, while traveling westbound on Interstate 40 near mile marker 261. Your Affiant observed the white GMC box truck had temporary California license plate PC77673. Your Affiant learned that the white GMC box truck had no valid registration record and appeared to be counterfeit. Your Affiant knows that other vehicles used by this organization use temporary California license plates to confuse law enforcement and avoid detection.

12. Your Affiant, along with other agents, surveilled the white GMC box truck while it traveled from westbound Interstate 40 from mile marker 261 until mile marker 190, where Arizona Department of Public Safety initiated a traffic stop of the white GMC box truck. Your Affiant learned that during the traffic stop ARANA immediately got out of the box truck and lifted his shirt and turned around in a 360 motion, then ran across westbound Interstate 40 oncoming traffic, through the median, then across eastbound Interstate 40 oncoming traffic, and attempted to cross the BNSF tracks but a moving train was in ARANA's way. Your Affiant knows that ARANA was subsequently apprehended several minutes later while hiding in a culvert. Your Affiant observed that ARANA had a cross body bag on his person at the time of his arrest. Your Affiant learned that a search incident to arrest occurred of ARANA's person and his cross-body bag. Your Affiant learned that during the search, a key that appeared to fit a pad lock was located in ARANA's cross-body

bag. Your Affiant also learned that ARANA had a counterfeit Sinaloa driver's license that reflected what appears to be his true name of Francisco Javier ARANA Nieblas.

13. Your Affiant knows that ARANA was then transported to Flagstaff Police Department located at 911 East Sawmill, Flagstaff, Arizona.

14. Your Affiant along with other agents then went to the white GMC box truck and conducted a safety check of the box truck to include the cab prior to seizing the abandoned vehicle. Your Affiant then observed there was a pad lock on the cargo compartment of the box truck. Your Affiant then had the lock cut off and conducted a safety check of the cargo area of the box truck. Once the door was opened, your Affiant confirmed there were no other people in the cargo area of the box truck. When the cargo area was opened your Affiant observed the entire cargo area was full of Nike shoes. Your Affiant estimates that there were approximately 100 master cases of Nike shoes that were in the cargo area of the box truck. Your Affiant knows that a picture was taken of the cargo area, and then the door to the cargo area was then secured. Your Affiant knows the lock was then placed on the front passenger seat of the box truck, and the white GMC box truck was then transported to the Flagstaff Police Department located at 911 East Sawmill, Flagstaff, Arizona.

15. Special Agent Charles Cole told your Affiant that the key that was in the possession of ARANA's cross body bag opened the lock that secured the cargo compartment of the white GMC box truck.

16. Your Affiant learned from Nike security that based on the lot numbers the Nike shoes were identified as Air Jordan 11 and are due to be release to the public in May of 2024 with the retailer Foot locker. Your Affiant knows that a Nike master case has six pairs of shoes in each case which would equal approximately 600 pairs of shoes. Based on information provided by Nike security, your Affiant learned that the manufacturer's suggested retail price (MSRP) for the Nike shoes is $190 per pair of shoes worth a total of approximately $114,000 located within the box truck.

Francisco Javier ARANA Nieblas

17. Your Affiant checked Department of Homeland Security records for ARANA and learned that he is resident of Mexico who resided in Los Mochis, Sinaloa, and has been voluntarily removed from the United States to Mexico on three separate occasions.

18. Your Affiant conduced a criminal history check for ARANA and learned that he has been arrested for possession of a controlled substance as well as receiving stolen property.

19. Special Agent Tazten Starnes and Flagstaff Police Department Sergeant Carlos Leyva read ARANA his *Miranda* rights and he invoked, and no questions were asked of him.

## CONCLUSION

20. For these reasons, your Affiant submits that there is probable cause to believe Francisco Javier ARANA Nieblas committed the crime of Possession or Receipt of Goods Stolen from Interstate Shipment, in violation of Title 18, United States Code (U.S.C.) § 659.

21. I declare under penalty of perjury under the laws of the Unites States of America that the forgoing is true and correct.

*Chris Foster*  04-15-2024

CHRIS FOSTER
Special Agent
Homeland Security Investigations

Sworn to and subscribed telephonically this ___15___ day of April, 2024.

Camille D Bibles
Digitally signed by Camille D Bibles
Date: 2024.04.15 12:17:00 -07'00'

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge